IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AHMED AMEER MINNI,<br><br>Defendant. | Case No: 1:17-cr-270 (LMB) |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant Ahmed Minni, through undersigned counsel, respectfully submits his memorandum in aid of sentencing.

## Introduction

Mr. Minni comes before the Court for sentencing after pleading guilty to one count of Conspiring to Provide Material Support and Resources to a Designated Foreign Terrorist Organization in violation of 18 U.S.C.§ 2339B. Mr. Minni accepts full responsibility for the conduct that led to his appearance before this Court for sentencing. This memorandum is not intended to excuse or minimize his actions, but, rather, to present to the Court a full picture of Mr. Minni. We respectfully submit that other factors have substantial importance in determining a just and appropriate sentence. In particular, we suggest that focus is warranted on the time Mr. Minni spent in Pakistan between 2009 and his return to the United States in 2022. Mr. Minni was incarcerated in Pakistan for more than 12 years and subjected to cruel treatment and horrendous prison conditions. He continues to suffer health complications that are the direct result of his incarceration.

The first and most critical thing to be said about Mr. Minni relates to the issue of remorse. He is not the same person he was in 2009. Mr. Minni experiences regret and shame every day for his actions that led him to travel to Pakistan in 2009. He has lost 13 years of his life, during which his family languished in the United States, worrying about his wellbeing, but unable to do anything to help. He blames himself for inviting his friends, who are now co-defendants, to join him. His closest friend, Aman Yemer, suffered a catastrophic medical crisis in Pakistan that has left him unable to care for himself. Mr. Minni blames himself—if he hadn't solicited Mr. Yemer, this would never have happened. These are a few of the consequences of Mr. Minni's actions that will plague him for the rest of his life.

Mr. Minni fully understands and appreciates the wrongfulness of his conduct and the harm he caused to others and himself. He has vowed to himself and his loved ones that he will never again find himself in this situation. Based on these and other circumstances described below, we ask the Court to impose the sentence requested by the government, one day of imprisonment, with credit for time served at the Alexandria Detention Center, followed by 20 years of supervised release. This sentence would be sufficient, but not greater than necessary, to effectuate the purposes of sentencing prescribed in 18 U.S.C. § 3553(a).

**Argument**

*Legal Standard*

The Court is required to consider the Federal Sentencing Guidelines in imposing a sentence, but *United States v. Booker,* 543 U.S. 220 (2005) provides that the Guidelines are "merely one sentencing factor among many, and the calculated guideline range must be considered in conjunction with the other § 3553(a) factors." *United States v. Reinhart*, 442 F.3d 857, 864 (5th Cir. 2006) (citing *Booker*, 543 U.S. 220). The Guidelines are "but one of eight factors the sentencing judge must consider." *United States v. Ovid*, No. 09-CR-216 (JG), 2010 U.S. Dist. LEXIS 105390, at *5 (E.D.N.Y. Oct. 1, 2010).

The factors enumerated in 18 U.S.C. § 3553(a) direct the Court to consider the full history and character of the defendant. Focus on the § 3553 factors "produces sentences that are moored to fairness, and to the goals of sentencing set forth in § 3553(a)(2), but sometimes not so much to the advisory Guidelines range." *Id.* at *4-5. 18 U.S.C. § 3553 requires a "sentence sufficient, but not greater than necessary" when the following factors are considered:

> "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant . . . (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for (A) the applicable

3

category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (5) any pertinent policy statement . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553 (2022).  In considering these factors, 18 U.S.C. § 3661 states that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661 (2022).

*History and Characteristics of Mr. Minni*

Ahmed Minni is a 33-year-old lifelong resident of the Northern Virginia.  He is fortunate to have been raised in a stable and loving home.  His parents are first generation immigrants who came to the United States from Ethiopia in 1981.  His parents fled their native country after facing growing instability and danger.  They settled in the Northern Virginia region.  They were very fortunate for the opportunities America provided and started a family.  Mr. Minni is the second oldest of his parent's four children.  He has always had a very close relationship with his siblings and parents.  His father worked at Reagan National Airport and was often gone from early in the morning into the evening.  His mother was a homemaker for most of Mr. Minni's life.  The family took semi-annual vacations and spent time together on the weekends when Mr. Minni's father was not working.

Education and faith were very important to Mr. Minni and his family.  With that

came a certain set of values and morals. They were demanding at times, but Mr. Minni always tried to make his family proud. His mother has always been a very important part of his life. They have always had a close relationship, which continues to this day. Mr. Minni's mother is warm and kind, but also commands respect. During his childhood, Mr. Minni would need permission from his mother to attend events or go to social outings. This relationship was not borne out of fear—it was based on respect and admiration. His mother has always made sacrifices for the family and ensured they had shelter, food, and, most importantly, love.

Sports were an important part of Mr. Minni's youth. Despite his small stature, he excelled at soccer and basketball. He maintained a close group of friends and was always known to be the best basketball player. Two close friends were Aman Yemer and Ramy Zamzam. They attended West Potomac High School together. They shared a faith, but that did not dominate their relationship. They often socialized with kids from all faiths and engaged in typical high school activities. School came easy to Mr. Minni. He found himself able to obtain good grades without much effort—even qualifying for AP courses and doing well enough on tests to qualify for college credits.

Mr. Minni has always had a strong relationship with his Muslim faith. He often attended events at the mosque and would visit for the daily prayers. During his youth, the family moved to Alexandria, Virginia. This meant that the mosque was a close walk from the home. This further increased his participation with his mosque. Regrettably, Mr. Minni did not use the resources he had available at the mosque that likely would have prevented this tragic tale. As further detailed below, Mr. Minni was exploited and manipulated to believe that it was an obligation of a "good" Muslim to engage in violent

5

acts. A relatively brief conversation with an Imam or anyone else at the mosque would have taught Mr. Minni that everything he was being told was contrary to the teachings of the Quran.

Mr. Minni has the type of parents every child would hope for. They love their son and will do anything to help and support him. Despite the fact that his parents separated during his incarceration, he maintains a close relationship with both of them. Mr. Minni believes his own criminal conduct and poor choices contributed to their divorce. He believes that if he had been present, they would have been able to resolve their issues. He blames himself for bringing stress into the family. His parents maintain a civil, but not close relationship. Upon his return, the family has tried to come together. While Mr. Minni spends time with his father and mother separately, he is hoping that the entire family will grow closer.

While his family has been tremendous in the love and support they have provided Mr. Minni, there is one condition on their willingness to help -- he must recognize the wrongfulness of his actions and commit to never finding himself before this Court or any other court ever again. Upon returning to the United States in September 2022, Mr. Minni's family helped him adjust. The world has changed tremendously in the past 13 years. Since returning home, Mr. Minni has tried to make use of every moment of every day. After losing 13 years of his life, he does not want to waste any time. He has held a number of jobs, including working as a pharmacy technician and delivery driver. Mr. Minni has determined that he would like to pursue his own career and formed a company to sell goods on online marketplaces. He understands that certain career paths are now foreclosed because of his decision to break the law. He is dedicated to supporting

himself and spends hours every day building his business. He started by selling things around the house and is now working on building inventory to grow his business.

When he is not working, Mr. Minni is spending time with his family. Mr. Minni lives with his mother, sister, brother-in-law, and niece, who was born shortly after Mr. Minni's return to the United States. The presence of his baby niece has been refreshing and has added joy to the family. Mr. Minni has cherished this time spent with his family. His mother notices that even "after all that [Mr. Minni] has been through his primary concern is still about his family." Exhibit A, Letter from Shemsa Fitwi. His sister notes that Mr. Minni "enjoys playing with [his niece] and he shows her so much affection." Exhibit B, Letter from Amoona Minni. She also recognizes that Mr. Minni "always goes out of his way to help [their] mom." *Id*. His brother in law, who met Mr. Minni for the first time in September 2022, describes Mr. Minni as a "warm and friendly person" whose "presence has really brought joy to our household. Exhibit C, Letter from Mohammad Abrar. There is not much idle time—Mr. Minni's days are filled with family or trying to grow his business. His family continues to support him and help in any way they can.

*Nature and Circumstances of the Offense*

Mr. Minni's path is one that is all too common in cases with similar charges. He fell victim to a skilled recruiter seeking out young Muslim males to travel to the Middle East to engage in armed conflict. Through social media, he was misled with videos of what purported to be American forces carrying out atrocities on Muslim civilians. He now understands he, along with thousands of others, were targeted with videos that were designed to induce an emotional response. He missed obvious red flags—attempts to

7

isolate Mr. Minni from his family and justify obvious wrongful acts of deceit through religion.  Unfortunately, Mr. Minni was not able to resist the lure presented by his recruiter.  Now, with the benefit of time and discussions with law enforcement, he fully appreciates what happened and will never again put himself in position to be exploited.  He hopes his suffering and punishment will deter others from falling for the same ruse in the future.

In May 2009, Mr. Minni was contacted by a recruiter through social media.  He now understands the recruiter was an American that had traveled to Pakistan to engage in violent jihad.  Over a series of months, the recruiter convinced Mr. Minni that it was his obligation as a Muslim to travel to the Middle East to engage in "jihad."  He convinced Mr. Minni that there were Muslims that needed help and needed to be defended from violent acts.  Mr. Minni understood that this meant he would travel to the front lines, including Afghanistan, and was prepared to engage in combat with American forces.

Between May 2009 and November 2009, Mr. Minni prepared to travel to the Middle East and recruited four friends to join him.  Before leaving, he recorded a video with another member of the group.  The group traveled to Pakistan and attempted to travel to Afghanistan.  They were arrested by Pakistani authorities and were subsequently charged, convicted, and sentenced to prison.   Mr. Minni disavows his actions and the statements made in the video.

The speed at which Mr. Minni's life deteriorated is not an indication of a violent individual that is an unrepentant career criminal.  Mr. Minni was only a few years removed from graduating high school and working towards a college degree when he found himself facing criminal charges in a foreign country.  He appears to be adjusting

8

well. But there are constant reminders of his actions. While his friends are excelling in their careers and raising their families, Mr. Minni is left trying to start over after losing 13 years of his life. He uses his friend's accomplishments as motivation. He yearns for what they have. This, coupled with the love and support of his family and most importantly, his will to change and succeed, will help Mr. Minni to continue to progress.

*Need for The Sentence Imposed*

The government has acknowledged the unique circumstances of Mr. Minni and his conduct in recommending a sentence of one day imprisonment. Mr. Minni was subjected to cruel and inhumane punishment while incarcerated in Pakistan related to the same conduct that brings him before the Court. He also fully understands and appreciates the wrongfulness of his actions and has expressed genuine remorse. He blames himself for recruiting his friends and causing harm to them and their families. While incarcerated in Pakistan, he watched as his best friend, Mr. Yemer, deteriorated. He was helpless while his friends were beaten. These circumstances, and others further described below, justify the sentence requested by the government.

The horrific treatment Mr. Minni endured in Pakistan started upon his arrest. He was taken into custody and immediately blindfolded. His close friend, Ramy Zamzam, was physically assaulted by one of the arresting officers. Mr. Minni and Mr. Yemer were transported to an unknown location. They were brought into a room for questioning and struck on the head while blindfolded. They were questioned about their presence in Pakistan. Mr. Minni was transported to different locations over the next 30 days. At these locations, he heard people being beaten and screaming for help. He was kept in

9

solitary confinement and not allowed to talk to others. Basic resources were withheld. He was not able to brush his teeth for 30 days.

Between January 2010 and August 2011, Mr. Minni was incarcerated in Sargodha, Pakistan. The conditions were horrendous. The prison cell was open to the elements. The jail lacked basic infrastructure and would often run out of water. Mr. Minni was told he could not talk to other inmates. The staff also beat the inmates. On one occasion, Mr. Minni watched as Mr. Yemer was attacked and hit in the face by jail staff. There was no justification for the attack. Mr. Minni tried to intervene to protect Mr. Yemer. The staff responded by beating Mr. Minni and others with their fists and sticks. The jail staff also used medieval devices to restrict movement. One such device, commonly referred to as fetters, were leg shackles with a bar extending on the inside between the feet. Mr. Minni could only shuffle his feet and was unable to lift either foot. These restraints were often used for extended periods of time—weeks at a time. Even when they were ultimately removed, it took days for the sensation to return to his legs.

Mr. Minni's health deteriorated at the Sargodha jail. He suffered gastrointestinal issues. He frequently experienced stomach pain, diarrhea, and vomiting. Mr. Yemer's physical condition deteriorated as well. Mr. Minni and the other inmates lacked basic resources. On one occasion a family member brought supplies for Mr. Minni and the others. The jail staff refused to distribute the goods. Mr. Minni and others asked questions about the whereabouts of the goods. The jail responded by sending 20 guards to beat Mr. Minni and others with their fists and sticks. The jail later distributed the goods. In addition to lacking basic infrastructure and resources, the food at the Sargodha jail was scarce and rancid. Mr. Minni often found foreign objects in the food. When

finishing a bowl of food, there was often rocks and pebbles at the bottom of the dish. Bugs and hair were found in the bread and rice. The unsanitary conditions further compromised Mr. Minni's health.

After being convicted in Pakistan, Mr. Minni was sent to the Central Jail, Faisalabad. The jail suffered from the same deficiencies as Sargodha—lack of basic infrastructure and unsanitary accommodations and food. The jail frequently ran out of water and the power would go out for long periods of time. The jail used techniques to disorient and destabilize Mr. Minni and the other inmates. The inmates were forced to move cells every day. Mr. Yemer's physical and mental health deteriorated during the 6 years he spent at this jail. Mr. Minni watched as his best friend was singled out and beaten without justification. Mr. Yemer began talking to himself and acting irrationally. The jail perceived his actions as hostile and started beating him more frequently. Mr. Yemer's condition deteriorated to the point where he stopped speaking and was unable to care for himself. Mr. Minni helped with almost every basic task. He helped Mr. Yemer eat, dress himself, and go to the bathroom. Mr. Minni begged the jail officials to take Mr. Yemer to the hospital. The jail refused and threatened Mr. Minni with beatings.

In 2016, Mr. Minni was moved to High Security Prison in Sahiwal. Mr. Yemer's condition had deteriorated to the point where he was sent to a jail hospital. In Sahiwal, Mr. Minni's health deteriorated. His gastrointestinal issues progressed. He was tested for Typhoid fever after experiencing severe stomach pain, diarrhea, high fever, and extreme fatigue. The jail staff did not return with the results. After weeks of protesting, Mr. Minni finally learned that he tested positive for Typhoid fever. After suffering needlessly for weeks, the jail started a regiment of antibiotics. The illness had

progressed, and Mr. Minni has never fully recovered. He was also diagnosed with H-pylori in Sihwal. He was recently diagnosed with small intestinal bacterial overgrowth (SIBO), likely resulting from the delay in treatment. Before being incarcerated in Pakistan, Mr. Minni never had any serious health issues and had no history of GI disorders.

We respectfully submit that the conditions of confinement over the 12 years Mr. Minni spent in Pakistan are relevant in determining what is an appropriate and just punishment. Mr. Minni was subjected to extreme physical and mental harm and has suffered tremendous punishment. He was often kept in isolation for long periods of time. Complaints about the inhumane conditions and treatment were met with threats of violence and physical attacks. Pleas to American officials were met with cold comfort. He watched as his closest friend deteriorated to the point where he needed Mr. Minni's help dressing, eating, and going to the bathroom. Mr. Minni is not seeking praise for helping Mr. Yemer—he did it because he cares for Mr. Yemer and could not stand watching him suffer. He also did it because he felt responsible for the situation—Mr. Yemer was only in Pakistan because Mr. Minni asked him to join. This continues to haunt Mr. Minni daily. He often thinks about Mr. Yemer and becomes emotional—he blames himself for Mr. Yemer's current condition.

At the direction of Pretrial Services, Mr. Minni has seen a mental health professional to deal with the emotional trauma resulting from his incarceration and guilt. While it was determined that Mr. Minni "appeared to be adjusting quite well" to life after his 12 years in Pakistani prison, Mr. Minni understands that he needs to continue to address his mental health. *See* Exhibit D. Mr. Minni has continued to receive treatment

12

and will continue to receive individual therapy sessions. He has been "active, engaged, and receptive" to the continued therapy. *Id*.

### *The Imposition of a Fine Is Unnecessary*

We respectfully request that the Court exercise its discretion to decline to impose a fine upon Mr. Minni. Imposing a monetary fine against Mr. Minni would not serve the interest of justice or the public interest. His conviction entails several consequences, almost all of which will negatively impact his ability to obtain employment. The case also garnered media attention in 2009 and again recently. On top of the criminal conviction and notoriety, Mr. Minni needs to explain a 13-year gap in his life when seeking employment. Mr. Minni seeks to continue the progress he has made since September 2022 reintegrating back into society and obtaining stable employment. The imposition of a fine would only serve to deter this objective.

### **Conclusion**

Mr. Minni understands that the situation he finds himself in is the direct result of his actions. It is our submission that he is not and should not be defined by his actions that led to his appearance before the Court. Shortly after his extradition and arrest in this matter, he sought to accept responsibility by pleading guilty. He will continue to try to make amends for his actions and will forever blame himself for the harm he brought upon his family and friends, particularly Mr. Yemer. We respectfully submit that a sentence of one day of imprisonment, with credit for time served at the Alexandria Detention Center, followed by 20 years of supervised release is appropriate and in accordance with the requirements set forth in 18 U.S.C. § 3553(a) and ask the Court to impose the sentence recommended by the government.

Respectfully submitted,

*/s/ Marc Eisenstein*

_____
Marc Eisenstein
Coburn & Greenbaum, PLLC
1710 Rhode Island Ave, NW
Second Floor
Washington, DC 20036
Tel: 202-470-2695
marc@coburngreenbaum.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 25, 2023 a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all counsel of record.

/s/
Marc Eisenstein

14